**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**ALBERT BROWN**                                                                            **PLAINTIFF**

**V.**                                                                     **CAUSE NO. 3:11-cv-00146-CWR-FKB**

**MISSISSIPPI DEPARTMENT OF HEALTH**                                       **DEFENDANT**

**ORDER ON POST-TRIAL MOTIONS**

A previous Order recites this case's facts at length,[1] but for the matters now at hand, a briefer recollection suffices. Albert Brown is an African-American employee of the Mississippi Department of Health (MDH). In 2004, he filed suit against MDH for race discrimination after MDH denied him a promotion to the position of Chief Information Officer (CIO). Instead, the agency selected another individual, Michael Scales, who, when hired, was placed in another position, Systems Manager III, because officials "were not sure if [Scales] could perform the job [CIO] adequately."[2]

A jury returned a verdict in Brown's favor. Brown then filed a motion for reinstatement or alternatively for front pay. Because the position was filled the district court determined that "reinstatement [was] not the proper equitable remedy," and instead awarded three years of front pay.[3] In 2007, the United States Court of Appeals for the Fifth Circuit affirmed in part and reversed

---

[1] *Brown v. Mississippi Dep't of Health*, No. 3:11-cv-146, 2012 WL 1143846, *1 (S.D. Miss. April 4, 2012) (hereinafter "*Brown II*").

[2] *Brown v. Mississippi Dep't of Health*, No. 3:05-cv-109, 2006 WL 286775, *5 (S.D. Miss. Feb. 3, 2006) (Order denying summary judgment).

[3] *Brown v. Mississippi Dep't of Health*, No. 3:05-cv-109, 2006 WL 1806561, *2-3 (S.D. Miss. June 29, 2006), *rev'd in part on other grounds*, 256 Fed. App'x 710 (5th Cir. 2007).

in part the judgment.[4]

In 2008, the CIO position became vacant. Brown again applied and again was rejected. He filed a charge of discrimination with the EEOC, which issued a Determination letter finding that:

> The proximity and time between the protected activity and the adverse actions indicate that the Charging Party was subjected to retaliatory action by Respondent. Based on the evidence, I have determined that there is reasonable cause to believe that Respondent discriminated against Charging Party . . . on the basis of race in violation of Title VII. . . . There is also reasonable cause to believe that Respondent retaliated against Charging Party by denying him a promotion for engaging in a protected activity.[5]

Brown then filed this lawsuit alleging race discrimination and retaliation under Title VII. Among the facts supporting his claim was evidence that an MDH official, Ron Davis, arguably retaliated against Brown by informing the agency's hiring consultant, Kathy Rudd, about Brown's 2004 discrimination case and describing Brown as "not . . . one of the stronger candidates."[6]

At trial, the Court entered a directed verdict in favor of MDH on the race-discrimination claim, and the jury returned a unanimous verdict in favor of Brown on the retaliation claim. The jury awarded Brown $75,000 in back pay and $350,000 in compensatory damages for emotional pain and mental anguish.[7]

Both parties have now submitted post-trial motions. MDH has moved for judgment as a

---

[4] *Brown v. Mississippi Dep't of Health*, 256 Fed. App'x 710 (5th Cir. 2007). The court reversed the award of $25,000 for non-pecuniary damages, finding that "the supporting evidence [was] speculative and insufficient" and "not sufficiently detailed." *Id.* at 711 (quotation marks and citation omitted).

[5] Exhibit P-4.

[6] *Brown II*, 2012 WL 1143846, at *1.

[7] Verdict Form [Docket No. 37].

matter of law, for a new trial, or for a remittitur.[8] Brown has moved for attorney's fees and the promotion he was denied or, in the alternative, front pay.[9]

## I.      Whether a Lack of Evidence Requires Judgment as a Matter of Law

When a party submits a post-trial motion for judgment as a matter of law, the Court must "disregard all evidence favorable to the movant that the jury was not required to believe."[10] The motion should be granted only if the evidence before the jury, when considered in the light most favorable to the non-movant, cannot support the verdict.[11]  The Court does not substitute its judgment of the conflicting evidence or evaluate the credibility of the witnesses.  That is the job of the jury.[12]  The Court need only "'ask whether a reasonable jury could have reached the same result.'"[13]

In a Title VII retaliation suit, the plaintiff bears the burden of establishing a *prima facie* case of retaliation, after which the defendant must articulate a legitimate, nonretaliatory reason for its employment action.[14] If the defendant does so, then the final burden rests with the plaintiff to prove

---

[8] Motion for Judgment as a Matter of Law or New Trial or Remittitur [Docket No. 44].

[9] Plaintiff's Motion for Equitable Relief [Docket No. 46].

[10] *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 393 (5th Cir. 2012).

[11] *Id.* (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 403 (5th Cir. 2009)).

[12] *Saucier v. Caldwell Banker Joseph M. Endry Realty*, 302 Fed. App'x 302, 304 (5th Cir. 2008).

[13] *Hardy v. City of Tupelo, Miss.*, No. 1:08-cv-28, 2009 WL 3678262, *2 (N.D. Miss. Nov. 2, 2009) (quoting *Jordan v. Ector County*, 516 F.3d 290, 300 (5th Cir. 2008)).

[14] *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

that the defendant's explanation is actually a pretext for retaliation.[15]

In this case, MDH contends that Brown offered no evidence of pretext.[16] It argues, as it did in its motion for summary judgment and at trial, that it rejected Brown's application because it wanted to hire someone with more management experience than Brown.[17] In response, Brown points to Ron Davis' e-mail regarding Brown's 2004 lawsuit, as well as to Kathy Rudd's ambiguous testimony at trial that this revelation had "not really" affected her decision.[18] Viewed in the light most favorable to Brown, this evidence shows that MDH used Brown's protected activity – namely, his 2004 lawsuit – as a reason not to promote him in 2008.

MDH also argues that its criteria for the CIO position – especially management experience – were so well established and unrebutted that it is entitled to judgment as a matter of law. This argument misunderstands the question presented by a motion for judgment as a matter of law. The question is not whether the jury should have been persuaded by the movant's evidence, but instead whether the non-movant presented evidence that could have supported the jury's verdict. The latter question must be answered in the affirmative. Moreover, the jury's verdict is afforded great deference and this Court will not substitute its opinion for the reasonable factual determination of

---

[15] *Id.* at 557.

[16] Defendant's Memorandum of Authorities in Support of Motion for Judgment as a Matter of Law or New Trial or Remittitur [Docket No. 45] at 4 (hereinafter "MDH's First Brief").

[17] *Id.* at 4-5.

[18] Plaintiff's Response to Renewed Motion for Judgment as a Matter of Law or New Trial [Docket No. 48] at 3-4 (hereinafter "Brown's First Brief"). Rudd's equivocation about how the information might have affected her decision was obvious. The jury heard and saw how she resisted the efforts of counsel for the state to have her agree that her decision had not been affected. Furthermore, the jury was entitled to reject Davis' explanation that by sending the email to Rudd, he was merely trying to help out.

a jury. The jury saw the witnesses, heard the testimony, and reviewed the exhibits. This verdict represents its collective judgment.

Therefore, MDH's request for judgment as a matter of law is denied.

## II.   Whether a Lack of Evidence Requires a New Trial

MDH's next request is for a new trial. A new trial should be granted only if the jury's verdict is "contrary to the great weight of the evidence."[19] In this case, Brown clearly established a *prima facie* case of retaliation and presented compelling evidence that MDH's explanation for not promoting him was merely a pretext. MDH's request for a new trial is denied.

## III.   Whether a Jury Instruction Regarding the "Cat's Paw" Theory Requires a New Trial

After the close of evidence, the Court submitted Instruction No. C-13C to the jury. It read as follows:

> If you find that Ron Davis' recommendation to Kathy Rudd as to how to evaluate applicants was based on Mr. Brown's prior complaints of race discrimination, and if you also find that recommendation was the proximate cause of the Defendant's decision not to select Mr. Brown for promotion, then you must find the Defendant liable for retaliation.
>
> The independent investigation by Kathy Rudd regarding the decision to select the more qualified candidates cannot be used to negate any finding of liability. As such, even if Kathy Rudd had no improper motives when she made her decision to not recommend Mr. Brown for the promotion, the Defendant must still be found liable for retaliation if Ron Davis' recommendation as to how to evaluate applicants was based on Mr. Brown's prior complaints of race discrimination and that recommendation was the proximate cause of the Defendant's decision to not promote Mr. Brown.

A jury instruction should be given only if the record contains legally sufficient evidence that

---

[19] *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998).

supports the instruction.[20]

MDH contends that this instruction lacked any evidentiary basis and therefore was improper.[21] Specifically, MDH argues that Ron Davis' e-mail to Kathy Rudd could not support the Court's "cat's paw" instruction. Under a "cat's paw" theory of liability, an employer is liable "if a supervisor performs an act motivated by [illegal] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action."[22] According to MDH, "nothing in that email establishes that Davis harbored any animus, retaliatory or otherwise. The email simply provided Rudd with background facts about . . . two Department employees who were applicants for the open position, neither of whom Davis found to be one of the stronger candidates."[23]

MDH's view of the e-mail is, of course, one interpretation entitled to consideration by the finder of fact. Another view – and one which a reasonable jury would have been entitled to adopt – is that Ron Davis intended to poison Kathy Rudd against Brown's application. Davis' disclosure was unsolicited, and a reasonable jury could have concluded that he was motivated by a retaliatory intent to prevent Brown's hiring. Additionally, Rudd herself did not categorically deny that Davis' e-mail affected her decisions; she only said, with equivocation apparent to everyone in the courtroom, that the e-mail had "not really" affected her.

Because Davis' e-mail could have led a reasonable jury to believe that he was motivated by

---

[20] *See Huffman v. Union Pac. R.R.*, 675 F.3d 412, 417 (5th Cir. 2012).

[21] MDH's First Brief at 12.

[22] *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011).

[23] MDH's First Brief at 14.

6

retaliatory animus intended to cause the rejection of Brown's application, and Rudd's testimony could have led a reasonable jury to conclude that Davis' e-mail was the proximate cause of the decision not to promote Brown, the jury instruction was proper. MDH's request for a new trial on that basis is denied.

## IV.  Whether the Jury's Award of $350,000 for Compensatory Damages Should Be Reduced

MDH's argument concerning remittitur is two-fold. It first argues that the jury had no evidentiary basis on which to award compensatory damages for emotional injuries. Second, MDH argues that even if an award is proper, the compensatory damages must be reduced to Title VII's statutory cap of $300,000.[24]

In MDH's view, Brown's evidence "consisted of vague, conclusory, and uncorroborated allegations of mental anxiety or being upset."[25] MDH relies on cases holding that in order for a plaintiff to recover for emotional distress, "there must be a specific discernible injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm."[26] MDH also points to cases where the Fifth Circuit has reduced awards based solely upon the plaintiff's testimony.[27]

However, "[t]here is a strong presumption in favor of affirming a jury award of damages."[28]

---

[24] 42 U.S.C. § 1981a(b)(3).

[25] MDH's First Brief at 19.

[26] *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998) (quotations omitted).

[27] MDH's First Brief at 20-21 (citing *Vadie v. Mississippi State Univ.*, 218 F.3d 365 (5th Cir. 2000) and *Brown v. Mississippi Dep't of Health*, 256 Fed. App'x 710 (5th Cir. 2007)).

[28] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (quoting *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995)).

An award for pain and suffering "is within the province of the jury, so long as the award is not impermissibly affected by 'passion or prejudice,'"[29] and is not "clearly excessive."[30]

> We review with deference damage awards based on intangible harm, because the harm is subjective and evaluating it depends considerably on the demeanor of witnesses. Nonetheless, to merit any award greater than nominal damages emotional distress damages must be supported by competent evidence concerning the injury. In certain cases a plaintiff's testimony alone may be sufficient proof of mental damages.[31]

Juries within the Fifth Circuit have awarded substantial emotional distress awards based upon the plaintiff's testimony alone, and the Fifth Circuit has affirmed those awards.[32]

In determining whether a remittitur is in order, this Court compares the plaintiff's award to other, factually similar cases in the Fifth Circuit, then remits "only to the maximum amount the jury could have awarded" in light of those other cases.[33] Pursuant to this 'maximum recovery' rule, if

---

[29] *Schexnayder v. Bonfiglio*, 167 Fed App'x 364, 367 (5th Cir. 2006) (citation omitted).

[30] *Giles*, 245 F.3d at 488 (quoting *Eiland*, 58 F.3d at 183).

[31] *Tureaud v. Grambling State Univ.*, 294 Fed. App'x 909, 916 (5th Cir. 2008) (citations and quotations omitted)

[32] *See, e.g.*, *id.* (finding $140,000 compensatory damages award for emotional distress not clearly excessive); *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 (5th Cir. 2000) (upholding $100,000 compensatory damages award for emotional distress); *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 262 (5th Cir. 1999) (affirming $100,000 award under the ADA for past and future mental anguish); *see also Hardy*, 2009 WL 3678262, at *22-23 & n.7 (collecting cases and refusing to remit jury award of $200,000 for emotional distress damages, where award was supported by testimony beyond the plaintiff's own); *Minter-Smith v. Mukasey*, No. 3:03-cv-1057, 2008 WL 2164565, *11 (S.D. Miss. May 22, 2008) (remitting award from $300,000 to $150,000); *Chollett v. Patterson-UTI Drilling Servs., LP*, No. V-08-27, 2010 WL 3700833, *3-7 (S.D. Tex. Sept. 14, 2010) (refusing to remit award of $100,000 -- $50,000 each for past and future compensatory damages).

[33] *Thomas v. Tex. Dept. of Criminal Justice*, 297 F.3d 361, 368-69 (5th Cir. 2002). Although the plaintiff cites to a number of cases outside of this circuit, *see* Docket No. 48, at 8-10, the Court rejects plaintiff's invitation to rely upon those cases or any other cases outside of the circuit. The only cases for an appropriate comparison are those from this circuit. *Id*.

the Court does remit an award, it then usually adds another 50% "multiplier, or percentage enhancement" to ensure it is not substituting its judgment for the jury's.[34]

In *Turead v. Grambling State University*, the Fifth Circuit affirmed a $140,000 award of emotional distress damages to a law enforcement officer who accused his employer of retaliatory discharge.[35] The plaintiff, who was the only witness to provide testimony concerning the emotional distress he suffered because of the retaliation, described it as a "painful experience" and one which caused him to be "deeply hurt."[36] He also testified that he "had the blues," he was stressed, and that the discharge was "emotionally embarrassing."[37]

In similar fashion, the testimony of emotional distress in our case was provided exclusively by the plaintiff. Brown described how, after the first jury's finding of discrimination was affirmed, his office was moved into a cubicle, his job duties were taken away, and employees were removed from under his supervision. He was left with "nothing to do."[38] When the CIO position came open again, he applied. Despite the retaliatory tactics taken against him, Brown held out hope that he would receive a "fair shake" this time.[39] As he described it, he thought they "would do the right thing."[40] He was not selected.

---

[34] *Id*. at 369 & n.8 (citing *Salinas v. O'Neill*, 286 F.3d 827, 831 n.6 (5th Cir. 2002) and *Giles*, 245 F.3d at 488-89).

[35] *Tureaud*, 294 Fed. App'x at 911-12.

[36] *Id.* at 916.

[37] *Id*.

[38] Trial Transcript, at 63-65.

[39] *Id*. at 124.

[40] *Id*.

9

After being denied this promotion, Brown believed that he had been discriminated against yet again – a suspicion which has now been confirmed by the jury. "It was disheartening."[41] It hurt, and he was angry, upset, and confused.[42]

Brown testified to his feelings of loss of dignity, stating that he felt like he was "less of a man" and was incapable of providing for his family.[43] He also lost his desire to "even want to exist." This was compounded by sleepless nights in which Brown unsuccessfully tried to "wrap [his] mind around" what was happening to him especially given his initial belief that MDH would "do the right thing" after the first jury had spoken, and surely after the court of appeals affirmed the jury's judgment.[44] He simply could not believe he was going through the same thing again.[45] Brown further stated that he was disheartened because he felt "like [he had] been blackballed."  "I guess in my mind I just don't know where to go from here," he said.

The jury observed Brown's demeanor and listened to the exasperation and frustration in his voice. The sum of his testimony is best explained in his response to a question from his counsel about going through this a second time:

---

[41] *Id.* at 125.

[42] *Id*. at 125-26.

[43] Title VII was designed in part to address the loss of dignity one faces when discriminated against. *See King v. Hillen*, 21 F.3d 1572, 1582 (Fed. Cir. 1994) ("The purpose of Title VII is not to import into the workplace the prejudices of the community, but through law to liberate the workplace from the demeaning influence of discrimination, and thereby to implement the goals of human dignity and economic equality in employment.").  No one can dispute that to be the victim of discrimination is painful.

[44] In search of an answer, Brown explained that he asked, "Lord, why am I still having to go through this?  I thought this was over.  I just don't understand." Trial Transcript, at 125.

[45] *Id.*

10

> It's very difficult. It's very difficult. Because after you went - - after I went through it the first time and got the jury verdict, you feel vindicated. You're thinking, surely, they're going to do the right thing. After all the processes of going through the interviews and you're trying to be truthful, you're trying to be honest, telling the interviewer and everybody else what you really do and what you expect and these things and you get in there and you try your best to show the people that you want to do the job, all you want is an opportunity, and in the process of that you still get I guess, for lack of a better word, blackballed. That's the way I feel.
>
> I feel like I've been blackballed. I feel like I've been set out to say, Okay. I don't care what you do. I don't care how good a job you do. I don't care how good of a manager you are, how good of a technical person you are, you're not going to get this job. And it's disheartening.
>
> And I guess in my mind I just don't know where to go from here. You know, you get to the point where you just don't know where your life is going to be then.[46]

The jury was entitled to recognize the evident pain and humiliation Brown conveyed when he spoke about being discriminated against a second time. The jury's award suggests that it found his testimony compelling.

Notwithstanding the jury's persuasion, the cases cited above indicate that Brown's $350,000 award cannot be sustained. The sole testimony regarding these damages came from the plaintiff alone, without support from another family member or expert.

While the award must be reduced, in light of *Turead*, the Court believes that Brown has established a case for an award of damages of at least $140,000. The unique facts of our case – especially the harm and humiliation inherent in being discriminated against a second time, by the same governmental agency – and Brown's testimony of the effect of that discrimination, may actually support an award greater than that awarded in *Turead*. But the Court will nevertheless

---

[46] *Id.* at 126-27.

adopt that figure pursuant to the maximum recovery rule.[47]

Because the Court is granting in part the defendant's motion for remittitur and reducing the jury's award, it applies the 50% multiplier "[t]o avoid substituting [the Court's] judgment for that of the jury."[48] The $140,000 base award and $70,000 multiplier result in a final award of $210,000. The Court will observe that even after adding the multiplier, this final award is substantially less than the jury's original verdict.

Brown may accept this amount or have another trial on damages. If he chooses to have a new trial, he may be able to better substantiate his claims of injury.[49]

Finally, because the award has been reduced to an amount below Title VII's statutory cap, MDH's alternative argument for remittitur is moot.

## V.    Whether Brown is Entitled to the Promotion or Front Pay

Brown begins his post-trial motion with a request that he be promoted to the position for which he applied, but suggests that might be infeasible. MDH argues that the promotion is not feasible because the position for which Brown applied has been filled. The Court agrees that because the position has been filled, promotion is not feasible.

Instead, the Court grants Brown's alternative request for front pay. Brown seeks six years

---

[47] *See Giles*, 245 F.3d at 489 ("Of course, our reassessment of damages cannot be supported entirely by rational analysis, but involves an inherently subjective component."); *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 774 (5th Cir. 1996) ("Judgments regarding noneconomic damages are notoriously variable."); *Salinas*, 286 F.3d at 832 ("No bright-line rule can take account of the variety of evidence and context presented by these types of cases.").

[48] *Giles*, 245 F.3d at 489; *see Salinas*, 286 F.3d at 833 (applying 50% multiplier upon remitting award); *Hardy*, 2009 WL 3678262, at *23 (declining to apply multiplier where award was not remitted).

[49] *Giles*, 245 F.3d at 489.

of front pay, which would take Brown to retirement.[50] MDH opposes that request and, in reciting recent decisions by Mississippi's federal courts, argues that an award of 1-3 years is more appropriate.[51]

The Court finds that the most appropriate award of front pay is for a period of four years. The history of Brown's applications suggests that the position for which he has twice applied comes open roughly every four years: Brown first applied in 2004, and after his first lawsuit, he applied again in 2008. Therefore, Brown is awarded four years of front pay, which amounts to $100,000.[52]

## VI. Whether Brown is Entitled to Attorney's Fees

Finally, Brown "requests that once a final judgment is entered, that [he] be allowed a reasonable period of time to submit his petition itemizing attorneys fees and detailing costs in this action."[53] MDH does not address this request in its brief.

In a Title VII suit, "a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."[54] Brown's request for attorney's fees is well-taken and will be granted. Brown shall file his itemization of fees and costs no more than 30 days after the entry of the final judgment in this matter.

---

[50] Plaintiff's Brief in Support of Motion for Equitable Relief [Docket No. 47] at 5 (hereinafter "Brown's Second Brief").

[51] Defendant's Response to Plaintiff's Motion for Equitable Relief [Docket No. 49] at 2 (hereinafter "MDH's Second Brief").

[52] MDH does not attack Brown's contention that the appropriate rate of front pay would be $25,000 per year. *See* Brown's Second Brief at 4.

[53] Brown's Second Brief at 5.

[54] *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978).

## CONCLUSION

Both post-trial motions are granted in part and denied in part. MDH's motion is denied to the extent it requests judgment as a matter of law or a new trial. Its motion is granted insofar as it seeks remittitur of Brown's compensatory damages, which will be reduced to $210,000.

Brown's motion is denied to the extent he requests promotion to the CIO position. It is granted insofar as he requests front pay and additional time to seek attorney's fees. The Court awards $75,000 in back pay and $100,000 in front pay. The amount of attorney's fees will be determined after Brown submits appropriate evidence.

**SO ORDERED**, this the 30th day of October, 2012.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE