# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

ALBERT BROWN                                                          PLAINTIFF

v.                                                       CAUSE NO. 3:11-CV-146-CWR-FKB

MISSISSIPPI DEPARTMENT OF HEALTH                    DEFENDANT

## ORDER

Before the Court is plaintiff Albert Brown's motion for attorney's fees. Docket No. 58. The defendant has responded, Docket No. 62, the plaintiff has replied, Docket No. 64, and the matter is ready for review. The motion will be granted in part and denied in part.

## I. Procedural History

This employment discrimination case began with Albert Brown's filing of a charge of discrimination with the EEOC on December 15, 2008. Docket No. 27-4. In May 2010, the EEOC issued a determination letter finding reasonable cause to believe that the defendant had subjected Brown to retaliation and race discrimination. Docket No. 27-5, at 2.

In February 2011, Brown filed this suit in the Circuit Court of Hinds County, Mississippi. Docket No. 1. The defendant removed the suit to this Court one month later. *Id.* Discovery ensued. The Court ultimately denied the defendant's motion for summary judgment and set the matter for trial. Docket No. 31.

In June 2012, a three-day jury trial was held. At the close of evidence, the Court entered a directed verdict in the government's favor on Brown's race discrimination claim. Docket No. 55. The jury then returned a verdict in Brown's favor on his retaliation claim. *Id.* Upon consideration of the parties' post-trial motions, the Court affirmed liability, reduced the jury's award of compensatory damages, denied Brown's request for promotion, and awarded Brown front pay. *Id.* This motion followed.

## II. Present Arguments

Brown's motion includes: (1) a billing statement detailing the 244.7 hours his attorneys, Louis Watson, Jr. and Nick Norris, spent on this case in tenth-of-an-hour and quarter-hour intervals; (2) a joint affidavit from Watson and Norris attesting to their time and addressing the *Johnson*

factors; and (3) an affidavit from local employment attorney Stephen A. Brandon – who said he had practiced with or against Watson and Norris on several occasions – that described those attorneys' skill, experience, and reasonable billing rates ($300 and $250 an hour, respectively).[1] Docket No. 58. Given those hours and rates, Watson and Norris seek a total fee award of $63,717.50. *Id.*

The defendant does not dispute Brown's entitlement to reasonable attorney's fees. Docket No. 62. It first claims that Brown's attorneys spent too much time on the case because 244.7 hours works out to 6.12 weeks. *Id.* at 4. The argument is a general one. Notably, the defendant does not challenge any particular line item on counsel's billing statement. The defendant also contends that counsel's requested hourly rates are "excessive," and implies – but does not state – that rates of $250 for Watson and $200 for Norris would be appropriate. *Id.* at 5.

In rebuttal, plaintiff's counsel observe that they brought two attorneys to trial just as the defendant brought two attorneys to trial, and claim that "[o]nce the attorney time is accounted for with the requirement of 2 attorneys at trial, the time expended becomes 5.19 weeks of attorney time to fully litigate the case, which is more than reasonable for a Title VII case." Docket No. 64, at 1. They point out that in the first lawsuit between Brown and the defendant, which also resulted in a plaintiff's verdict, the District Judge awarded fees for 233.04 hours of work, which they contend is comparable considering that the present litigation "had significantly more documents to review" and an additional deposition. *Id.* at 1-2. Counsel conclude by arguing that their hourly rates are reasonable when compared to other attorneys' rates in other cases and the tendency for hourly rates to rise over time. *Id.* at 2-3.

## III. Legal Standard

In evaluating a request for attorney's fees, the Court first calculates the "lodestar," defined as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Abner v. Kansas City Southern Ry. Co.*, 541 F.3d 372, 376-77, 383 (5th Cir. 2008). "[T]he lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010) (citations omitted).

"The party seeking an award of fees should submit evidence supporting the hours worked

---

[1] Brandon, a former partner in regional and national law firms, stated that he practices almost exclusively within labor and employment law, has represented clients on an hourly and contingency fee basis, and is presently engaged in such work as a solo practitioner. Docket No. 58-3.

and rates claimed," *Hensley*, 461 U.S. at 433, and "bears the burden of showing reasonableness." *Abner*, 541 F.3d at 377. "[T]he burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quotation marks and citation omitted). "Charges for excessive, duplicative, or inadequately documented work must be excluded." *Id.* (citation omitted).

The Court then adjusts the lodestar upward or downward by considering the 12 factors set forth in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Abner*, 541 F.3d at 376-77. The "most critical" of these factors is "the degree of success obtained." *Id.* at 377. As a part of this analysis, the Court "explain[s] how each of the *Johnson* factors affects its award," although its discussion "need not be meticulously detailed to survive appellate review." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008); *see Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990) ("we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions on fee awards consume more judicial paper than did the cases from which they arose."). As the Supreme Court has explained, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

**IV.    Discussion**

    **A.    Hours Reasonably Expended**

After reviewing the attorneys' billing statement, the Court finds that Watson and Norris reasonably expended their time in this matter, with the following exceptions:

| Date | Description | Reduction |
| --- | --- | --- |
| 2/16/11 | Norris's 2.25 hour work on the two-count complaint, summons, and civil cover sheet is reduced to 0.75 hours (see below) | 1.5 |
| 3/15/11 | Watson's 30 minute review of the defendant's answer and affirmative defenses is reduced to 15 minutes | 0.25 |

3

| 4/9/11 | Watson's 45 minute review of the Initial Order and deadlines is reduced to 15 minutes | 0.5 |
|---|---|---|
| 5/17/11 | Watson's 45 minute review of the CMO and deadlines is reduced to 15 minutes | 0.5 |
| 10/25/11 | Norris's 2.25 hour preparation of subpoenas is reduced to 0 hours (see below) | 2.25 |
| 11/14/11 | Norris's 45 minute preparation of notices of depositions is reduced to 0 minutes (see below) | 0.75 |
| 12/29/11 | Norris's 15 minute preparation of a second motion for extension of time is reduced to 0 minutes | 0.25 |
| 4/2/12 | Norris's 7.5 hour preparation of a draft pretrial order is reduced to 3.75 hours | 3.75 |
| 4/4/12 | Norris's 3.75 hour preparation of a final draft pretrial order is reduced to 1.5 hours | 2.25 |
| 6/29/12 | Norris's 8.75 hour research time on post-trial motions, including tax implications, is reduced to 4.5 hours | 4.25 |
| 7/13/12 | Norris's 8.25 hour research time on post-trial motions is reduced to 4.0 hours | 4.25 |
| 7/24/12 | Norris's 7.5 hour preparation of a two-page reply brief [Docket No. 50] is reduced to 3.75 hours | 3.75 |
| 10/30/12 | Watson's 1.75 hour review of the Court's Order on Post-Trial Motions [Docket No. 53] is reduced to 0.75 hours | 1.0 |

Accordingly, Watson's recoverable hours are reduced from 50.85 to 48.6; while Norris's recoverable hours are reduced from 193.85 to 170.85.

In three instances, the Court disallowed attorney's fees for time counsel spent on tasks that should have been performed by paralegals. *E.g.*, *Hardy v. City of Tupelo, Miss.*, No. 1:08-cv-28, 2010 WL 730314, *7 (N.D. Miss. Feb. 25, 2010) ("It is appropriate for the court to distinguish between legal work and work which can be accomplished by non-lawyers. . . . The court may

compensate hours claimed for such clerical work at a lower rate."); *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-cv-568, 2011 WL 6699447, *8 n.4 (S.D. Miss. Dec. 21, 2011) (finding a reduction from attorney rates to paralegal rates appropriate "due to the nature of the tasks [counsel] was apparently asked to perform in this case."). Specifically, the 2/16/11, 10/25/11, and 11/14/11 time entries were reduced or eliminated for this reason, for a total reduction of 4.5 hours. The Court finds that 3.5 hours of that time is recoverable at a paralegal's reasonable local billing rate of $100 an hour.[2] *E.g.*, *Alexander v. City of Jackson, Miss.*, No. 3:04-cv-614, 2011 WL 1059293, *14 (S. D. Miss. Mar. 21, 2011) (awarding $100 an hour for paralegal time); *In re Wayne Farms LLC*, No. 2:07-md-1872, Docket No. 143 (S.D. Miss. Dec. 23, 2009) (same).

**B.     Reasonable Hourly Rates**

The next question is whether $300 and $250 are appropriate hourly billing rates for Watson and Norris, respectively.

Watson and Norris are correct when they point out that in 2011, Judge Ozerden awarded a plaintiff's attorney [David McMullan, Jr.] who had been practicing for 22 years a $300 hourly rate, in a case that was litigated between 2007 and 2011. *Penthouse Owners*, 2011 WL 6699447, at *8. That provides some support for Watson's $300 an hour request. At the same time, though, Judge Ozerden reduced an associate's [Gary Yarborough, Jr.] hourly rate to $200 because he had joined the bar only in 2006. *Id.* at *10. That weighs in favor of adjusting downward Norris's request for $250 an hour, since Norris joined the bar in 2004, only two years before Yarborough.

A review of decisions from this Court and the Northern District of Mississippi reveals that reasonable attorney's fee awards vary based on the attorneys before the Court, the evidence presented in support of the fee award, and the District Judge's judgment. *See JGT, Inc. v. Ashbritt, Inc.*, No. 1:09-cv-380, 2011 WL 1323410, *2 (S.D. Miss. April 5, 2011) (declining to award requested rates of up to $500 an hour because "[t]he Court is familiar with the prevailing hourly rates in the community, and finds that $200.00 per hour is a reasonable hourly rate for senior level attorneys, taking into consideration the attorney's experience and the skill necessary to represent

---

[2] One hour of the 10/25/11 entry is not recoverable at any rate. *See Martin v. Mabus*, 734 F. Supp. 1216, 1226 (S.D. Miss. 1990) ("purely clerical or secretarial tasks, by whomever performed, are overhead and customarily included in the attorney's hourly fee, which is calculated to cover those items together with a profit margin.").

[clients] properly in this case."); *Alexander*, 2011 WL 1059293, at *14, 19 (awarding Watson and Norris $250 and $200 an hour, respectively, for work performed from 2006 to 2009), *aff'd* 456 F. App'x 397 (5th Cir. 2011); *Hardy*, 2010 WL 730314, at *7 (awarding $265 an hour for an attorney [Jim Waide] practicing since 1974); *In re Wayne Farms*, at Docket No. 143 (awarding $350 an hour for partners, including those practicing only since 2003 [Seth Hunter], and reciting that "[t]his Court has also previously found $350.00 per hour to be reasonable for partners in this locality and other district courts of this circuit have done likewise."); *MTW Investment Financing, LLC v. Great Western Capital Corp. of the America's, Inc.*, No. 3:07-cv-611, Docket No. 19 (S.D. Miss. Mar. 14, 2008) (awarding $200 an hour for an attorney practicing since 1991, and $100 an hour for an attorney practicing since 2005); *The Stellar Group v. Pilgrim's Pride Corp.*, No. 3:06-cv-186, Docket No. 66 (S.D. Miss. Nov. 13, 2007) (awarding $250 an hour and $260 an hour for an attorney practicing since 1994).

An appropriate rate for a partner like Watson, therefore, ranges between $200 and $350 an hour. The record evidence in our case indicating that Watson appropriately should charge $300 an hour is obviously well within this range. No evidence or real argument to the contrary has been submitted.[3] Given the record evidence, Watson's experience as a partner in both defense and plaintiff-side firms in our area, and the run of cases, $300 an hour is a reasonable rate for Watson. And, based on the evidence, Norris's years of experience, and the case law, the Court finds that an appropriate rate for his work on this case is $235 an hour.

As a result, the lodestar is ($300 x 48.6) + ($235 x 170.85) + ($100 x 3.5), for a total of $55,079.75.

C.     **The *Johnson* Factors**

The final step of this process requires the Court to discuss each of the *Johnson* factors and adjust the lodestar upward or downward based on that discussion.

> The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of

---

[3] The defendant has not produced a single affidavit supporting its position on reasonable hourly rates in the Jackson legal community, although it was certainly entitled to do so to rebut the plaintiff's evidence. *See, e.g.*, *Smith v. Fresh Cut Floral & Catering, Inc.*, No. 3:07-cv-661, 2008 WL 4539630, *2 (S.D. Miss. Oct. 7, 2008) (describing defendants' evidence submitted in opposition to plaintiffs' counsel's requested hourly rate).

6

the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Penthouse Owners*, 2011 WL 6699447, at *3 (citation omitted). Again, the "most critical" of the *Johnson* factors corresponds to (8) – "the degree of success obtained." *Abner*, 541 F.3d at 377. "The United States Supreme Court has stated that many of the *Johnson* 'factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Penthouse Owners*, 2011 WL 6699447, at *4 (quoting *Hensely*, 461 U.S. at 434 n.9).

The *Johnson* factors are resolved as follows:

### 1. Time and Labor Required

The lodestar adequately reflects the amount of time and labor this case required. *See id.* The case was appropriately staffed by both parties.

### 2. Novelty and Difficulty

Contrary to counsel for plaintiff's contention, this case was not especially novel and did not present difficult legal or factual questions, given the run of employment cases. An upward adjustment is not called for.

### 3. Skill Required for Proper Performance

Watson and Norris are specialists in employment law. The lodestar adequately reflects the skill needed to litigate this employment discrimination case successfully.

### 4. Preclusion of Other Employment

The lodestar adequately reflects counsel's concerns about the preclusion of other work and general inconvenience to other clients that this trial involved. *See* Docket No. 58-2, at 2.

### 5. Customary Fee

The lodestar adequately reflects Watson and Norris's customary fees.

### 6. Fixed or Contingent

Brown and his attorneys have a contingency fee contract. *Id.* That will not affect the lodestar in this case.

### 7. Time Limitations

The lodestar adequately reflects that this case presented no unique time limitations.

### 8. Degree of Success

Brown was undoubtedly successful at trial. The jury's award of $350,000 in compensatory damages for emotional pain and mental anguish exceeded his attorneys' request during closing argument as well as Title VII's statutory cap. On the other hand, that outcome was offset somewhat by the Court's later reduction of that award, and it is true that Brown's race discrimination claim was not successful.

The Fifth Circuit holds that "the question of whether a party 'prevailed' and whether a fee award is 'reasonable' is not one to parse too thinly–whether by individual claim or the number of trials required to reach a result." *Abner*, 541 F.3d at 382. More to the point, the Supreme Court has reasoned that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435 (citation omitted).

Considering Brown's demands as stated in his complaint, the facts elicited at trial, the jury's verdict vindicating Brown's retaliation claim, its unusually-high damages award, and the final result of Brown's post-trial motions (including back pay, other compensatory damages, and front pay), Brown's attorneys were very successful. Their success, however, is appropriately reflected in the lodestar. No upward or downward adjustment will be made based on this factor.

### 9. Experience, Reputation, and Ability

Watson and Norris are known in the Jackson area as employment law specialists that regularly bring cases to trial and win jury verdicts. Their affidavit describes a number of employment law activities and publications in ABA publications. Docket No. 58-2, at 3. This factor does not support modification of the lodestar.

### 10. Undesirability

While counsel argue that the unavailability of punitive damages against the defendant, a government agency, made this case undesirable, that factor was later offset by the discovery of a 'smoking gun' email suggesting retaliation, making this case more desirable than most. Indeed, this case was relatively desirable for these attorneys even without the email. Watson and Norris were already familiar with the client, his potential claims, the issues, and the witnesses in this case

because they had represented Brown in previous similar litigation against the same defendant. The retaliation in this lawsuit was also close in time to the proceedings in the earlier litigation and appeal, such that the email was simply the apex of the desirability of this case. No increase for undesirability is appropriate.

        *11.     Nature and Length of Professional Relationship*

This is the second case involving Brown that was successfully taken to trial by Watson and Norris. That fact does not support any modification of the lodestar.

        *12.     Awards in Similar Cases*

Brown's attorneys acknowledge that this case presents "an above average award." *Id.* at 4. It is not necessary to modify our lodestar to further reflect awards in other cases.

After considering these factors, the lodestar will not be changed.

## V. Conclusion

The plaintiff's motion for attorney's fees is granted in part and denied in part. A reasonable attorney's fee in this case is $55,079.75. An amended final judgment will issue this day.

**SO ORDERED**, this the 5th day of March, 2013.

                                            s/ Carlton W. Reeves
                                            UNITED STATES DISTRICT JUDGE